We have your case, and we'll move on to United States v. Kane. Mr. Funes, thank you. We know you're a court-appointed attorney, as we know you are too. We appreciate both of your service. Mr. O'Donnell, whenever you are ready. Thank you. I'm Robert O'Donnell. I'm here for O'Donnell Christopher on behalf of Michael Kane, the appellant. And may it please the court. The court may feel that I have brought the court into a rather surreal moment because while I appreciate the excellent presentation before me, I'm actually going to disagree with the gentleman entirely on what Hydro is and why that matters in the law. I am actually going to say that Hydro not only was useful, but because Hydro is by its essence a thing of utility, that under Foreman, under the case law that refines Howey, Hydro is not a security. And I think that is the argument, or that is the analysis that I would like the court to pay attention to in the brief. So if the court remembers, in Foreman the issue was that there were shares of a housing cooperative that were being sold. And when you purchased the shares, yes, you might have had some expectation of profit in the end, in the very... Actually, before you get to that, for Mr. Kane, he entered a plea agreement, right? Yes, ma'am. And in that plea agreement, he agreed that the government could establish or prove every element of the crime, correct? Yes, that's correct. And then an element of the crime is that we're talking about a security or an investment contract, correct? That is correct. So then how do we get here? That is an excellent question. That is the threshold question that we're going to have to answer before we can get to the security question, which I hope we can get to. But the threshold question is answered by reminding the court that my client pleaded to the facts, and that's the only thing a defendant can plead to. And if you look at the plea colloquy, he was pleading to facts that satisfied perhaps the bare elements of Howey, but as Howey is refined under Foreman, there wasn't a pleading that would be sufficient that when you look at the facts could show as a matter of law that this particular instrument was not an instrument of utility, of use, of purpose. And so under Foreman then, it could be considered not to be a security. So that would be how I believe we passed that threshold question. If I may just say a couple things on the security before I move on to a few other things. So as I was saying, the question in Foreman was it was a housing cooperative, the shares were sold, and the reason why the shares were not considered an instrument was because the shares had a use, because the shares had a purpose. And if you look at the record, Hydro has an obvious purpose. It is a token which grants you entry into the ecosystem in which you can develop APIs, which is how applications communicate with each other. It's so you can develop on this hydrogen ecosystem the smart contracts. It's so you can develop blockchain things for know your customer and other things that you see in the record. You'll see it partly in the plea colloquy and also in the motion to dismiss. So the court can, looking at the record and only the record, determine as a matter of law that Hydro is something that had great use, was developed for its great use, and that was its essential purpose. There may be a secondary market for it, but it would be like a second. So Hydro is the token that you use to play the game, like an arcade token. There may be a secondary market for an arcade token, but the essential quality, the final cause of the arcade token is allowing your entry into the arcade. The accidental quality, the secondary qualities of the token are perhaps that it was very pretty, you can sell it on eBay, you may even wish to speculate on it, but it has a utility, it has a purpose. And that was what was being developed. And I would also say that what was being developed with Hydro was not the Hydro token. The Hydro token was allowing other developers in this decentralized platform to develop their own things, and so there is no reliance on the work of others. So you see in cases like Villeneuve where there was a self-watering planting system that was at issue as to whether that was a security, it turned out that that whole system was not going to be used as a secure, or considered a security, because the people who were using that system had to do their own work. They had to clean the system, they had to do some marketing with it, they weren't relying exclusively or even primarily on the efforts of others. And that would be the case with the Hydro token. The Hydro token is not something that's being developed. The Hydro token is the entrance to the development. Going back to the plea point, you don't have, as I see it, a record on any of this, right? We have in the record only the plea colloquy and the motion to dismiss. Right. So it seems hard post-plea to get engaged in all these kind of factual evaluations. It is hard. I would just encourage the court to take a look at the record and see if the court could perhaps find me persuasive on that. There are a few other points that are important to bring up in terms of sentencing and restitution that I will say very quickly. One is the obstruction enhancement. So we could see from the case law that when someone is guilty of obstruction, for example, in Banks in June, that person should only be found guilty of obstruction if you can show that that person purposefully obstructed the actual criminal investigation. Well, there was an SEC investigation that was happening during the time of, I think, the destruction of documents or potential information. Right. The deletion of text messages. So why doesn't that investigation qualify for purposes of the obstruction enhancement? Because I believe it puts us under the June precedent, which was when the IRS had a civil investigation. And then obstruction in that particular scenario or in that particular context wasn't necessarily a knowing and willful and purposeful obstruction of the later criminal context. So we have in our present case, two years later was the criminal issue. And so the mens rea requirement isn't quite there. It's really the most important thing. The secondary thing is that there was no actual obstruction that occurred because the SEC already had the full text messages. So the deletion of text messages was irrelevant. But the most important thing, especially under the Guevara precedent, is that the mens rea requirement wasn't there. I would also say a quick thing about the loss calculation. So for the government to establish a loss calculator, the government used a calculation based on an analysis of the gain to the hydrogen company over a certain period of time. So it was a revenue calculus. And that was the calculation that they used to determine how much loss should be attributed to the victims. Now, the cases that we have on point here show that, like Bracciale, like Basantes, show that it is not a relevant mode of analysis to use the gain calculation until you can show that there is no way, no reasonable way, to demonstrate that you can find what the victims' losses were. And we believe that we have in the record a very reasonable way to determine what the victims' losses were. And that was the analysis of my client's expert, Cusimano. And the last thing I would say, and then I'll reserve my time if I may. Why was that expert at all reliable? Because as I understand the record, he only considered 4,200 of the more than 300,000 rows of trading data in his analysis. Right, and he had to do some extrapolation, but that was the only analysis that was even offered in terms of loss. I think the court's point is that that was because it's very hard, right? It is hard, but it's not necessarily impossible. And I believe that the government should be forced to at least present some sort of a prima facie case for loss before it's allowed to use just simply revenue of hydrogen, which could have been revenue from anything, not necessarily even revenue concerning the hydro token, right? Because the company had other modes of gaining money. Does that qualify? Is that similar to intended loss, which our case law says can be, I guess, levied against the defendant? I wouldn't say it's even intended loss, because it's the gain that the company receives over a certain period of time. And so the loss hasn't even focused in on what was happening due to the particular volume trading concerning hydro. And that kind of calculus is what is necessary for a loss calculation. And the expert considered only 65 out of the 4,700. Right, and then extrapolated out from that, right. That 65 seems pretty low, doesn't it? It can seem a little low, but with the way sample sizes work, it's not necessarily all that low. And the government was certainly welcome to put on another expert who would look at more rows in the ledger. We would have to find that it was clear error for the court to reject that expert, right?  At least for me, that's going to be tough sledding. Fair enough. I think that's my time. Sounds good. Thank you for your argument. Mr. Lieberman, nice to see you again. Good morning again, Your Honors. May it please the court, Dave Lieberman for the United States. At least with respect to the indictment challenge, we think that that claim starts and ends with the unconditional guilty plea that you referenced, Judge Abudu, early on in my opponent's argument. Black letter law, unconditional guilty plea, weighs all non-jurisdictional defects in the criminal proceeding. The claim that Mr. Cain is raising here, that the allegations failed to show a question of fact, basically failed to show that the token is an investment contract and a security. We know from the Roe decision that it's a question of fact. Factual insufficiency of the indictment is not a jurisdictional challenge. The only two exceptions that this court has recognized for the guilty plea context, a claim challenging the constitutionality of a statute under the Supreme Court's class decision. We don't have that here. In this very narrow window, going back to the Peter case, and also evidence in the St. Hubert case, where the court looks at the indictment and says, this indictment affirmatively alleges conduct that is not a crime under federal law. We don't have that here because the indictment specifically alleged that the tokens were investment contracts, and that, therefore, security is under Title 15. That is all that the government needed to present to the grand jury. That is all that the grand jury needed to return. There is no obligation on the government to put forward all of our factual evidence that we are going to present at trial as to why this token meets the factual definition of an investment contract. So for all of these reasons, this claim is waived. The court must accept the factual allegation as true, as the district court did below, that the hydro token is an investment contract. Opposing counsel also referenced various aspects of the district court's colloquy in accepting his client's guilty plea. I did not understand the briefs here to raise any attack on the reliability of the plea colloquy that the district court conducted below. The opening brief clearly says on the first issue, it attacks the sufficiency of the indictment. So the government doesn't understand that any claim about the plea colloquy to be raised here, and as a result, I am unfortunately not equipped to dive into the exact details of the plea colloquy because I don't think it was raised in the opening brief. The claims should be deemed waived. Can you deal with the enhancements? Yes, Your Honor. Let me start with loss, and then I'll go to the obstruction, unless you would like a different sequence. I mean the obstruction. I'm happy to go there first. So two responses on the point that the obstruction occurred during the SEC proceeding. The guidelines commentary at the time specifically stated that conduct occurring before the start of the investigation, which is the start of the criminal investigation, may be covered if the conduct was purposely calculated and likely to thwart the investigation. And that's in fact what the district court judge found, right? Correct. That was the reason for it, that this was done in order to obstruct what was purposely calculated and likely to thwart the investigation or prosecution of the offense of conviction. Correct. And we have case law that says that that is permissible. Correct, Your Honor. And in responding to Defense Counsel's point that it only occurred during the SEC investigation, I'll rely on what the government said and we cited what we think is an on-point Second Circuit case theory that particularly in securities fraud, SEC and criminal investigations go hand in glove. And it is quite reasonable for the district court as fact finder at sentencing to infer that Mr. Cain, in deleting these messages, just thought to obstruct all investigation into his conduct, not just cabinet to the SEC investigation. And I think this court would have to say that the district court was clearly erroneous in adopting that inference. I don't think Mr. Cain gets there. Mr. Cain argues that how can I obstruct access to documents that the government already has? My response to that is that the provision by its own terms applies to attempted obstruction, not just obstruction. And so attempted obstruction is obstruction that never succeeds. And that is what happened here. We have a case on that, United States versus Taylor. Yes. Looping back to the loss, and I know this straddles both cases that the court has this morning. I'm not going to repeat all the points that the government made in response to Judge Abudi, your question as to why we, our presentation as to why loss could not be reasonably calculated. But a lot of those points which cut across both cases, I just want to flag that the Seventh Circuit in the Kassia case, which we cited in our brief, found many of those same points salient in affirming the district court's finding there to use gain rather than actual loss, and we think that that applies here to say that the district court's approach here was not clearly erroneous. In terms of the actual loss calculation that the defense expert proffered, Judge Grant, this goes to your question, the district court made a credibility finding. The district court here had a day-long hearing, testimony from both sides, long testimony from the defense expert under cross-examination by the government and some pretty skeptical questions by the district judge herself about the expert excluded trades by co-conspirators, and the district court concluded the expert didn't have a good reason to say, why are you excluding those trades from your overall data set? There were a number of other deficiencies that were brought out in that hearing. The expert excluded investors who purchased their first tokens before the conspiracy period, then purchased additional tokens while the scheme and the bot were operating, so they reasonably to infer that they could have been influenced by the scheme seeing upward price inflation, just the expert excluded that. The expert excluded the two investors who testified at Mr. Hampton's trial that essentially that they bought tokens based on this manipulation scheme. And so at the end of the day, the district court hears all that after a day-long hearing and says to the expert that the methodology narrowly cabined the loss and failed to reflect the scope of the fraud scheme. That's a credibility finding. Judge Grant, you mentioned that's a clear error review. I'm struggling to see how this court disrupts the district court's considered judgment that the expert did not offer credible opinions here. There are several other sentencing claims in this case, but I also know that the court has been sitting all week. I'm happy to return my remaining minutes to the court. We have no objections. We'd ask that the court affirm. Mr. O'Donnell. I'll try to be quick as well. So the government referenced Peter in terms of this threshold question as to whether the court can even consider whether Hydro is a security for my client's case. And I think Peter is an instructive case to look at. For Peter, the question was the defendant pled guilty to racketeering and mail fraud in connection with these sort of state liquor licenses. Well, it turns out that state liquor licenses aren't federal property, and so the federal court didn't have jurisdiction over that particular action. And that, I believe, is what is going on here. So the gentleman from the government is correct that there are only a certain narrow subset of challenges one can make once one has made a plea of guilty. I believe we are under that narrow subset of challenges. I mean, but you could have preserved it because you could have done a conditional plea. Correct. Yes, but I believe that not I believe. It is the case that this jurisdictional question can be raised at any time. It could even be raised as a writ of error quorum nobis after everything is over because the power of the court to hail a defendant before the dock can be brought up at any time. And that is the judgment in Peter, and that is the precedent that I would ask the court to consider that if there is no security, there can be no securities fraud. And if there is no security, there can be no federal jurisdiction. Can't you, I think, characterize a similar challenge to almost any indictment? Yes, every indictment has a certain factual nub that you have to get around. But this would be more, this would be closer to something like if you were brought before the court for tampering with federal mail, right, because you destroyed a package and it turns out that package was, it's seen in the record, that package was delivered by the person's neighbor and not by the United States Postal Service. Well, then the thing at issue, the very essence of the thing at issue is not a federal concern. But if the indictment says this package was delivered by mail, the fact that you have some factual information that shows that it doesn't is not a problem, is not a jurisdictional problem. It's a problem with proving up the allegations in the indictment. Those are two different things. Well, I would offer to Your Honor that if the record reflected very clearly that everyone was incorrect about what that package was, and so that the defendant pleaded to tampering with federal mail but was wrong that it was federal mail, that I would say the federal court is not interested. I think if the charge were tampering with federal mail and the indictment said the person accepted a package that their neighbor handed to them and thereby tampered with federal mail, then you would have an argument. But if the indictment says the person took a package out of their mailbox that was delivered by the post office, even if the facts don't turn out to show that, I think as long as the indictment says that, you don't have a jurisdictional issue. You have a factual challenge. To me, it would seem that you would have a jurisdictional issue, but I could be wrong. It would be the same as if you struck someone in a fight and then you pleaded guilty to assault and battery on a federal officer, but it turned out that you were wrong, that wasn't a federal officer. Even if the indictment pleaded those things, I would think that there just was no federal officer to be the subject of that particular claim. We'll just agree to disagree. Thank you so much. Thank you for the opportunity. Thank you. We've got your case again. Mr. O'Donnell, we appreciate your representing your client as a court-appointed attorney, and we'll move to our next case.